**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| Safex Foundation, Inc., Safe Exchange Foundation, LLC, and Daniel Dabek,<br><br>               Plaintiffs,<br><br>     - against -<br><br>Safeth, Ltd., Joey Lathus, Cynthia Lathus,<br><br>               Defendants. | **COMPLAINT FOR DAMAGES AND INJUNCTIVE AND DECLARATORY RELIEF**<br><br>Civil Action No._____<br><br><br>**JURY TRIAL DEMANDED** |

**COMPLAINT**

Plaintiffs Safex Foundation, Inc., Safe Exchange Foundation, LLC, ("Safex") and Daniel Dabek ("Plaintiffs"), for its Complaint against Defendants Safeth, Ltd. ("Safeth"), Joey "Crypto" Lathus, and Cynthia Lathus (together, the "Defendants"), upon personal knowledge as to its own facts and conduct and on information and belief as to all other matters, states and alleges as follows:

**INTRODUCTION**

1.      There is a line between mere "online trolling" and engaging in a campaign to steal trademarks and defame competitors.  The Defendants crossed that line by a large margin.  The Defendants' aggressive campaign to steal Safex's trademarks and to disseminate false accusations must cease immediately.

2.      This is an action alleging trademark infringement under the Lanham Act, common law trademark infringement, defamation, false light invasion of privacy, and unfair competition.

3.      Safex and Mr. Dabek are in the cryptocurrency industry.

4.      Cryptocurrencies are digital assets which can be used as a medium of exchange. The underlying technology for cryptocurrency is the blockchain.  The blockchain allows for the

creation of cryptocurrency, permits users to effectuate transactions in cryptocurrencies, and records all transactions in cryptocurrency.

5.      Bitcoin and Ethereum are the most popular forms of cryptocurrency.  However, there are thousands of other cryptocurrencies.  Two of those other cryptocurrencies were launched by Safex and are called Safex Tokens and Safex Cash.

6.      Safex was founded in 2015.

7.      Safex has adopted the name "Safex" (the "Mark") and a logo (the "Logo") (together, the "Safex Trademarks").  Set forth below are the Safex Trademarks:



www.safex.io



www.coinmarketcap.com

8.      All Safex websites, marketing materials, and references to Safex's cryptocurrencies incorporate the following Logo:



9.      Shortly after its creation, Safex began working on creating its own cryptocurrency.

10.     In November of 2015, Safex began posting on online forums and otherwise marketing the future launch of its cryptocurrency.

11.     In January of 2016, Safex completed its initial sales of its cryptocurrency.

12.     Since its inception, Safex has been building a global e-commerce platform where users all over the world can purchase goods and services using cryptocurrency.

13.     After years of technical work and research, Safex launched its e-commerce platform on December 23, 2020 (the "Safex Marketplace").  On this e-commerce marketplace users all over the world are able to seamlessly transact with one another using Safex Cash, which is one of Safex's cryptocurrencies.

14.     Safex's launch of its e-commerce platform in December 2020 coincided with a massive increase in the value, market participation, and investor interest in the cryptocurrency industry.

15.     During December of 2020 and January 2021, the price of Bitcoin increased from $18,625.02 to as high as $40,490.  The overwhelming majority of other cryptocurrencies followed suit and experienced a similar increase in price.

16.     The Defendants timed their attack during this key time for Safex, during the launch of its e-commerce platform at an unprecedented market rally in cryptocurrency.

17.     Following Safex's rejection of Mr. Lathus's efforts to become a marketing consultant for Safex, the Defendants began misappropriating the Safex Trademarks.

18.     In 2019, Defendants appropriated Safex's Mark when they began marketing a competing cryptocurrency called "Safex Platinum" ("Accused Mark").  Defendants also adopted a logo that is identical to Safex's Logo (the "Accused Logo," referred to collectively with the Accused Mark as the "Accused Trademarks").  Below is the comparison between the Safex Trademarks and the Accused Logo:

| Safex's Mark and Logo | Accused Mark and Accused Logo |
|---|---|
|  | |

19.    Not only have the Defendants been using Safex's Trademarks, but they have been falsely accusing Safex of trademark infringement.

20.    Defendants have been repeatedly accusing Safex of trademark infringement directly to important websites which are critical to the growth of Safex, and its cryptocurrencies, Safex Token and Safex Cash.

21.    These efforts have resulted in Safex's cryptocurrencies getting delisted from cryptocurrency listing services (websites that provide information about cryptocurrency including market price, volume, and market capitalization) and from social media platforms (where Safex communicates to its consumers).

22.    Defendants have also been disseminating false accusations against Safex and Mr. Dabek accusing them of being an "exit scam" and likening Safex to notorious cryptocurrency criminal enterprises.

23.    The nascent cryptocurrency industry has been plagued with scams and criminal activity and accusing a cryptocurrency company of operating an "exit scam" or a criminal enterprise causes immediate and irreparable harm in loss of reputation and investor interest.

---

[1] www.safexplatinum.com

[2] www.safeth.io

4

24.     On December 29, 2020, Plaintiffs served the Defendants with a formal cease and desist letter demanding that Defendants cease infringing on Safex's Trademarks and disseminating false statements.  Defendants did not formally respond.  Instead, Defendants began incessantly posting on Twitter acknowledging receipt of the cease and desist letter and continuing to defame Plaintiffs.  Accordingly, Plaintiffs brought this lawsuit.

25.     The Defendants' efforts to harm Plaintiffs have caused significant and irreparable harm because it has injured Plaintiffs' reputations and hindered investor interest at this critical time in Safex's history where (A) its e-commerce marketplace has just been launched; and (B) the price of cryptocurrency and investor interest is at an all-time high.

26.     The Defendants' conduct is calculated, obvious, and must cease immediately.  The harm is ongoing.  As long as Defendants continue their use of Safex's Trademarks and their false accusations, Plaintiffs' reputation continues to be harmed and it continues to lose market-share.

## PARTIES

27.     Plaintiff Safex Foundation, Inc. is a non-profit entity organized under the laws of Wyoming.  Safex Foundation, Inc.'s principal place of business is in Washington D.C., at 601 13th St. NW, Suite 900 South, Washington, D.C., 20005.  Safex Foundation, Inc. primarily relies on charitable donations to fund its operations.

28.     Plaintiff Safe Exchange Foundation, LLC is an entity organized under the laws of Missouri.  Safe Exchange Foundation, LLC's principal place of business is in Washington D.C., at 601 13th St. NW, Suite 900 South, Washington, D.C., 20005.

29.     Plaintiff Daniel Dabek is the founder of Safex.  Mr. Dabek resides in Virginia.  Mr. Dabek works in Washington D.C., where he oversees the operations of Safex at 601 13th St. NW, Suite 900 South, Washington, D.C., 20005.

30.     Defendant Safeth, Ltd. is a non-profit corporation organized under the laws of Colorado with its principal place of business located at 670 W. Menefee St., Unit 117, Mancos, Colorado 81328.

31.     Defendants Joey and Cynthia Lathus reside at 27450 Highway 160, Cortez Colorado 81321.

## JURISDICTION AND VENUE

32.     This Court has subject matter jurisdiction over the Lanham Act claims asserted herein pursuant to 28 U.S.C. §§ 1331 and 1338(a).  This Court has subject matter jurisdiction over the related state law claims raised in this action pursuant to 28 U.S.C. §§ 1338(b) and 1367.

33.     This Court also has subject matter jurisdiction under 28 U.S.C. § 1332(b), as this dispute is between Safex, which has a principal place of business in Washington D.C., and Defendants Safeth, which is a Colorado entity, and Joseph and Cynthia Lathus, who reside in Colorado.  The amount in controversy exceeds $75,000, exclusive of interest and costs.

34.     Personal jurisdiction is proper because Defendants caused tortious injuries within Washington D.C.  *See* D.C. Code § 13-423(a)(3) and/or (4).  Defendants' infringing activities and defamatory remarks cause harm to Plaintiffs in Washington D.C. because Safex's primary office is located in Washington D.C., Mr. Dabek operates Safex out of these primary offices, and Defendants' activities has harmed Safex's and Mr. Dabek's reputation in Washington D.C..

35.     Venue is proper in this District pursuant to 28 U.S.C. § 1391(b)(2).  Venue is proper under 28 U.S.C. § 1391(b)(2) because all or a substantial portion of the events that gave rise to Plaintiffs' claims transpired in Washington D.C., including that the Plaintiffs were harmed by the Defendants' defamatory statements within Washington D.C., which is where Safex's principle office and place of operation is located.

## BACKGROUND FACTS

**A.      Safex's Use of the Safex Name and Logo**

36.      Safex was founded in 2015.

37.      Safex issued the following cryptocurrencies, Safex Tokens and Safex Cash.  Each day, customers buy and sell Safex Tokens and Safex Cash.

38.      Safex also created an e-commerce marketplace where users all over the world are able to purchase goods with Safex Cash.

39.      Safex owns and operates a website (https://safex.io/), a blog (https://safex.org/blog/), and a forum (https://forum.safex.org/).[3]

40.      Citizens of Washington D.C. have access to Safex's website, blog, and forum twenty-four hours a day, seven days a week.

41.      Safex has been actively participating in the U.S. market since 2015.  Most of the users of the Safex Forum have been and still are located in the United States.  According to website data pulled from Google Analytics, 27.94% of the Safex's Forum's users from November 25, 2015 through January 14, 2021 were located in the United States.[4]  This data shows that Unites States users were the most numerous users of the Safex Forum by a large margin.  Australia had the second highest amount of Safex Forum users, who constituted 8.62% of users of the Safex Forum. The Safex Forum prominently displayed the Safex Trademarks during this time.

42.      Safex uses its Twitter page to share updates about Safex's development, promote Safex's cryptocurrencies and the Safex Marketplace, and to otherwise communicate with current and potential Safex customers.  Mr. Dabek also has a Twitter page in which he does the same.

---

[3]  *See* Exhibits A through C of the January 17, 2021 Declaration of Daniel Dabek ("Dabek Decl.") in support of a motion for a Temporary Restraining Order and preliminary injunction that is being fined concurrently with this Complaint and which is, along with all of this declaration's exhibits, incorporated by reference herein.

[4] *See* Dabek Decl. Ex. D.

43.     Safex also teaches classes and presents at conferences to explain the practical applications of blockchain and cryptocurrency.

44.     Safex uses the Safex Trademarks prominently on all websites and marketing materials.

45.     Safex announced its sale of cryptocurrency on a number of cryptocurrency web forums in November of 2015.   The name "Safex" was used in Safex's announcements of its cryptocurrency sale.

46.     Safex began selling its cryptocurrency in late 2015 and completed the initial sale by January of 2016.

47.     Safex's cryptocurrency was originally called the Safe Exchange Coin (SEC).

48.     Most of the users of the Safex Forum during this time were (and still are) located in the United States.  According to website data pulled from Google Analytics, 28.95% of the Safex's Forum's users from November 25, 2015 through January 14, 2018 were located in the United States.[5]  This data shows that Unites States users were the most numerous users of the Safex Forum by a large margin.   The United Kingdom had the second highest amount of Safex Forum users, who constituted 6.74% of Safex Forum users.   The Safex Forum prominently displayed the Safex Trademarks during this time.

49.     On September 3, 2018, Safex launched its second cryptocurrency, Safex Tokens.

50.     Safex also launched a cryptocurrency called Safex Cash.  Safex Cash is what customers use to buy goods and services on the Safex Marketplace.

51.     The development of Safex's platform occurred primarily on Github (https://github.com/safex).  Github is a popular code hosting platform that allows developers of

---

[5] *See* Dabek Decl. Ex. E.

blockchain and cryptocurrency technology to collaborate in the development and advancement of a project.  Safex has been using the Safex Mark on GitHub since March of 2016.

52.    In 2017, Safex hired a graphic designer to create the Safex Logo.  Safex's release of its Logo was prominently displayed on its website and in various media reports.  Since this Logo's inception, Safex has used the Safex Logo on all websites and marketing material.

53.    Safex created a YouTube channel in February of 2017.  From this YouTube channel, Mr. Dabek and other members of the Safex team routinely post videos providing updates on Safex's development, tutorials on how to utilize certain Safex features, and answers to questions submitted to Safex.  These videos all identify Safex and its cryptocurrencies with the Safex Trademarks.[6]

54.    A cryptocurrency exchange is where the majority of cryptocurrency consumers purchase cryptocurrency.

55.    Cryptocurrency exchanges are similar to traditional online securities brokerage websites which make it easy for consumers to buy cryptocurrency.

56.    It is nearly impossible for any particular cryptocurrency to gain widespread acceptance, volume, and ultimately market capitalization without being listed on cryptocurrency exchanges.

57.    Safex Tokens and Safex Cash are listed on a number of cryptocurrency exchanges which identify them using the Safex Trademarks.

58.    Every day, consumers log into these cryptocurrency exchanges and purchase and sell Safex Tokens and Safex Cash.  Many of these consumers are located in Washington D.C.

---

[6] *See* Dabek Decl. Ex. F.

59.     Safex Tokens and Safex Cash were listed on the cryptocurrency exchange Livecoin (www.livecoin.net).  Livecoin has listed Safex Tokens since April of 2019.  Livecoin listed Safex Tokens and Safex Cash using the Safex Trademarks.

60.     Upon being listed on LiveCoin, there was a significant increase in volume and market capitalization of Safex Tokens and Safex Cash.  In the three months following being listed on LiveCoin, average daily volume increased approximately 89.42% in Safex Tokens.

61.     Safex Tokens and Safex Cash are also listed on Xcalibra (www.xcalibra.com), another cryptocurrency exchange.  Xcalibra has listed Safex Tokens and Safex Cash since May of 2019.  Xcalibra identifies Safex Tokens and Safex Cash using the Safex Trademarks.[7]

62.     Safex Tokens and Safex Cash have recently been listed on the BW exchange (www.bw.com).  The BW exchange identifies Safex Tokens and Safex Cash with the Safex Trademarks.[8]

63.     Upon being listed on the BW exchange there was a significant increase in volume and market capitalization of Safex Tokens and Safex Cash.  In the three weeks following being listed on the BW exchange, average daily volume increased approximately 19,299.53% in Safex Tokens and 61,666.71% in Safex Cash.

64.     Cryptocurrency listing websites, also commonly referred to as "price discovery" websites, provide important pricing and other information about cryptocurrencies.

65.     Consumers use cryptocurrency listing websites to review the prices of cryptocurrency, the volume of trading in a particular cryptocurrency, and the total market capitalization of a particular cryptocurrency.

---

[7] *See* Dabek Decl. Exs. G and H.

[8] *See* Dabek Decl. Exs. I and J.

66.    It is nearly impossible to gain widespread acceptance of a particular cryptocurrency unless that cryptocurrency is listed on popular cryptocurrency listing websites.

67.    Cryptocurrency listing websites identify Safex Tokens and Safex Cash using the Safex Trademarks.

68.    Washington D.C. consumers have access to Safex's listings on these cryptocurrency listing websites and regularly access these websites to obtain information about Safex Token and Safex Cash.

69.    Safex Tokens and Safex Cash are listed on CoinMarketCap, which is one of the most prominent cryptocurrency listing websites.  CoinMarketCap listed Safex's Safe Exchange Coin (SEC) in March of 2016.  In July of 2017, CoinMarketCap began listing the Safe Exchange Coin using the Safex Trademarks.[9]  In May of 2019, CoinMarketCap replaced the listing of Safe Exchange Coin using the new Safex Token using SFT as the ticker.  In November of 2019, CoinMarketCap began listing Safex Cash using the Safex Trademarks and using SFX for the ticker.[10]

70.    Safex Tokens and Safex Cash are listed on the cryptocurrency listing portion of Coinbase (www.coinbase.com) using the Safex Trademarks.  Coinbase is one of the world's most popular cryptocurrency exchanges and cryptocurrency listing websites.

71.    CoinGecko (www.coingecko.com), another leading cryptocurrency listing website, listed Safex Token and Safex Cash using the Safex Trademarks since December of 2018.  However, as explained in more detail below, CoinGecko delisted Safex Token and Safex Cash because of false statements made by the Defendants to CoinGecko.

---

[9] *See* Dabek Decl. Ex. K.

[10] *See* Dabek Decl. Exs. L and M.

72.     Safex has also sold promotional products bearing the Safex Trademarks.   For example, Safex has sold phone covers, t-shirts, and jewelry.

73.     Safex filed a trademark application for the Safex Trademarks on December 24, 2020.  Safex owns U.S. trademark application Serial Nos. 90/410,526 and 90/410,523 for the Safex Mark and Logo, respectively.[11]

74.     In short, the cryptocurrency industry knows Safex by its Mark and Logo.

**B.     Following Safex's Rejection of Joey "Crypto" Lathus as a Marketing Consultant, the Defendants Retaliated**

75.     In late 2018, Defendant Joey "Crypto" Lathus requested to interview Mr. Dabek about the Safex project on Mr. Lathus's YouTube Channel.

76.     Mr. Dabek agreed and sat for a virtual interview with Mr. Lathus.

77.     Following the interview, Mr. and Ms. Lathus publicly supported Safex on social media and other outlets.

78.     For example, on May 23, 2019, Mr. Lathus tweeted a screenshot of his cryptocurrency wallet on Safex's platform and stated that Safex has a "BRIGHT future" in the caption of the tweet.  The Safex Logo is featured in the screenshot of Mr. Lathus' cryptocurrency wallet.

79.     On July 4, 2019, Mr. Lathus tweeted that "YOULL [sic] KICK YOURSELF HARD IF YOU DON'T OWN" Safex Tokens upon the opening of the Safex marketplace, and two days later, on July 6, 2019, tweeted that he was "All in on #safex $sft."

80.     Mr. Lathus later tweeted on July 25, 2019, "Absolutely love the new website @safex @dandabek looks great and has clear coherent information as well as a clean professional look."  The Safex Trademarks were prominently featured on Safex's website at that time.[12]

---

[11] A true and correct copy of Safex's USPTO application is attached as Exhibit 1.

[12] Dabek Decl. Ex. Q.

81.     In late 2019, Mr. Lathus approached Safex and requested to be hired as a marketing consultant.

82.     Mr. Dabek told Mr. Lathus that Safex was not interested in hiring him as a marketing consultant.

83.     Mr. Lathus continued to pursue Safex to be hired as a paid marketing consultant with increasing aggression.  Each time, Safex rejected Mr. Lathus's advances.

84.     Following Mr. Dabek's rebuffs of Mr. Lathus's repeated requests to be a marketing consultant for Safex, the Defendants engaged in a campaign to steal the Safex Trademarks and to disseminate defamatory statements about Safex and Mr. Dabek.

85.     Specifically, Safeth launched a competing cryptocurrency to Safex Tokens and Safex Cash.  Safeth called this new competing cryptocurrency called "Safex Platinum."

86.     In 2019, Defendants began marketing Safex Platinum using the Accused Trademarks on social media, internet forums, and Safeth's website (the "Safeth Website").

87.     Plaintiffs did not give permission to Defendants to use the Accused Trademarks.

88.     In or around July 4, 2020, the Defendants began selling Safex Platinum.

89.     The Safeth Website promotes the sale of Safex Platinum and directs users to a website, www.safexplatinum.com.  The Safeth Website also details plans to sell "Safeth Cash," which will be "mined via the Safex Platinum blockchain," to be used as the principle payment on the "Safex Platinum Market Place."  This course of action mirrors exactly what Safex did with Safex Token and Safex Cash.

90.     The Safeth website directs potential purchasers of Safex Platinum to a website titled https://www.safexplatinum.com/ (the "Safex Platinum Website"), which gives visitors the option to purchase Safex Platinum.  The Accused Logo is prominently featured on the Safex Platinum Website.

91.     The Safex Platinum Website lists Mr. and Ms. Lathus as members of the Safex Platinum team.

92.     Both the Safeth Website and the Safex Platinum Website are accessible to Washington D.C. consumers twenty-four hours a day, seven days a week.

93.     Safex's Accused Trademarks are prominently featured on Defendants' social media accounts, such and Facebook, Twitter, and LinkedIn.

94.     Upon information and belief, the Defendants control the following Twitter handles, each of which has posted the Accused Trademarks:

　　　(a)     @OfficialSAFeth

　　　(b)     @SafexPlatinum

　　　(c)     @JoeyCrypto420

　　　(d)     @CynthiaLathus

　　　(e)     @SlothAussie

　　　(f)     @RichBates13

　　　(g)     @IrelandSafex

　　　(h)     @Safex_Platinum

95.     Defendants have also created a YouTube page for Safex Platinum titled "Safex Platinum by Safeth," which features a video promoting a July 4, 2020 sale of "Safex Platinum" tokens issued by Safeth."[13]

96.     In or around July 17, 2020 Defendants filed an application with the USPTO seeking to register the name Safex Platinum.  Defendants deliberately and unlawfully made false statements to the USPTO in connection with this application.[14]

---

[13] https://www.youtube.com/channel/UCzxWr5_F7ABOanN_sbPyudg

[14] A true and correct copy of Defendants' application with the USPTO is attached as Exhibit 2.

97.     Defendants' application with the USPTO states that the name "Safex Platinum" was first used on November 1, 2018 and was first used in commerce on December 1, 2019.[15]

98.     Safeth misrepresented to the USPTO that "To the best of the signatory's knowledge and belief, no other persons, except, if applicable, concurrent users, have the right to use the mark in commerce, either in the identical form or in such near resemblances as to be likely, when used on or in connection with the goods/service of such other persons, to cause confusion or mistake, or to deceive."[16]

99.     On November 6, 2020, the USPTO responded that the "Specimen does not show direct association between mark and services."[17]

100.    The Defendants' tweets and other communications indicate that they were aware of Safex's use in commerce of the SAFEX mark and that they are seeking registration "to cause confusion or mistake, or to deceive," which is not consistent with what the evidence shows is "the best of the signatory's knowledge and belief" and therefore violates Defendants duty of candor to the USPTO and Safex's right not to be harmed by such deliberate falsehoods.

101.    Defendants' efforts to confuse the marketplace includes its online campaign to tell the marketplace that the Safex Trademarks are owned by Safeth and that Safex is infringing upon Safeth's trademarks.

102.    The Defendants made false accusations that Safex is a trademark infringer directly to cryptocurrency exchanges and cryptocurrency listing services.

103.    These false accusations are designed to get Safex delisted from these cryptocurrency exchanges and cryptocurrency listing services.

---

[15] *See id.*

[16] *See id.*

[17] A true and correct copy of the USPTO's November 6, 2020 response to the Defendants' application is attached as Exhibit 3

104. These efforts have already caused Safex to be delisted from a cryptocurrency listing service.

105. Getting delisted from cryptocurrency exchanges and cryptocurrency listing websites causes significant financial and reputational harm.

106. If a cryptocurrency is not listed on a cryptocurrency exchange it makes it extremely difficult for customers to purchase that cryptocurrency.

107. If information about a cryptocurrency is not reflected on cryptocurrency listing websites, investors are less likely to purchase that cryptocurrency.

108. It is well known in the cryptocurrency industry that reputable cryptocurrencies are listed on major cryptocurrency exchanges and cryptocurrency listing websites.

109. The Defendants disseminated false statements to CoinGecko, a cryptocurrency listing service. Defendants told CoinGecko that Safex was engaging in trademark infringement. CoinGecko responded by delisting Safex Tokens and Safex Cash.

110. Mr. Lathus publically claimed responsibility for CoinGecko's delisting of Safex Token and Safex Cash in a December 12, 2020 Facebook post. Mr. Lathus's post shows an email from CoinGecko to Mr. Lathus stating "Safex.io is no longer shown on CoinGecko." Mr. Lathus's post is captioned "Delisted #safex from COINGECKO due to trademark violations." In this post, Mr. Lathus admits that he told CoinGecko that Safex was a trademark infringer and caused Safex Tokens and Safex Cash to be delisted from CoinGecko.[18]

111. Mr. Lathus also sent an email on December 5, 2020 to the cryptocurrency exchange Livecoin falsely stating that Safex is infringing upon Safeth's trademarks.

---

[18] Dabek Decl. Ex. T.

112.     In this email to Livecoin, Mr. Lathus accuses Livecoin of trademark infringement. Mr. Lathus's email also directed Livecoin to a webpage containing baseless allegations of wrongdoing against Safex.   Upon information and belief, many of those allegations on that webpage were posted by Mr. Lathus.[19]

113.     Defendants also contacted social media platforms claiming that Safex is a trademark infringer and requesting that Safex and Mr. Dabek's social media accounts be deactivated.

114.     On December 12, 2020, Mr. Lathus posted on his Facebook "#safex is dead and I killed it[.] They don[']t realize it yet but after nothing happens on his [sic] market place block height fork..it was because of SAFETH,"  with screenshots of the Safex Twitter account requesting it re-instate Mr. Dabek's account and of a Tweet from Defendant Cynthia Lathus stating "Joey killed the [S]afex market before it could even begin."  Later that same day, Defendant Lathus again posted on Facebook a screenshot of a Twitter page stating that Safex's Twitter account was suspended, with the caption "#safex taken from Twitter due to trademark infringement[.] Compliments of Safeth."[20]

115.     On December 4, 2020, Mr. Lathus posted on his Facebook a screenshot of a Tweet asking Twitter support to un-suspend Mr. Lathus' Twitter account; the link to the Safex Platinum trademark application is included as a caption to the post.  Mr. Lathus commented:  "Come to Twitter and lend me a hand[.] I'm out here every day trying to clean up this scam in crypto [S]afex."[21]

---

[19] Dabek Decl. Ex. U.

[20] Dabek Decl. Ex. V.

[21] Dabek Decl. Ex. W.

116.    Defendants also took direct steps to confuse the marketplace by issuing a "white paper" that is identical to Safex's "blue paper."

117.    In the cryptocurrency industry, companies regularly issue "white papers" or "blue papers" which are similar to a prospectus.  These "white papers" or "blue papers" describe the business model and the cryptocurrency.  Cryptocurrency investors rely on "white papers" and "blue papers" when deciding whether to invest in a particular cryptocurrency.

118.    On January 3, 2018, Safex issued a "blue paper" which is available on its website. The "blue paper" contains the Safex Trademarks.[22]

119.    The Safeth website includes a white paper for prospective purchasers of Safex Platinum which includes the Accused Trademarks.  This white paper is dated October 31, 2019.[23]

120.    Mr. and Ms. Lathus are listed as the authors of the Safex Platinum white paper.[24]

121.    The October 31, 2019 Safex Platinum white paper is strikingly similar to a blue paper Safex released over a year earlier, on January 3, 2018.

122.    For example, the Safex blue paper contains an introduction stating the following:

> . . . Therefore, this document outlines the beta phase of the development cycle. This blue paper outlines the foundation on which the ***Safex Development team*** will build upon.  The conversion of Safex Tokens from the Bitcoin Blockchain into the Safex Blockchain will delineate the conclusion of beta, and the start of ***Safex Cash*** mining.  Future documentation will summarize the innovations that have taken place during the beta development phase and will be published prior to launch.  This document is the initial one and there will be more to follow, as development progresses, which will describe in depth each process as it reaches finalization in code.[25]

(Emphasis added).

---

[22] Dabek Decl. Ex. X.

[23] Dabek Decl. Ex. Y.

[24] *Id.*

[25] Dabek Decl. Ex. X.

123.    The Safex Platinum white paper contains a paragraph with nearly identical language, except for replacing "Safex Cash" with "Safeth Cash" and "Safex Development team" with "Safeth Development team":

> . . . Therefore, this document outlines the beta phase of the development cycle. This white paper outlines the foundation on which the ***SAFeth Development team*** will build upon and the start of ***Safeth Cash*** mining will begin.  Future documentation will summarize the innovations that have taken place during the beta development phase and will be published before the launch.  This document is the initial one and there will be more to follow, as development progresses, which will describe in-depth each process as it reaches finalization in code.[26]

(Emphasis added).

124.    The Safex blue paper contains a section called "Token," which Safeth also copied:

> ***Safex Tokens*** provide a means for people to license themselves with the blockchain net-work.  Any activity by users that intends to be lasting, and attached with a form of digital pseudonym, must be established through usage of ***Safex Tokens***.  There are 2,147,483,647 ***Safex Tokens*** that will ever exist and they serve a number of important utilities for Safex.[27]

(Emphasis added).

125.    The section in Safeth's white paper copies the language almost verbatim, except refers to "Safex Platinum Tokens" as opposed to "Safex Tokens":

> ***Safex Platinum Tokens*** provide a means for people to license themselves within the blockchain network.  Any activity by users that intends to be lasting, and attached with a form of digital pseudonym, must be established through the usage of Safex ***Platinum*** Tokens. There are 21,000,000 ***Safex Platinum Tokens*** that will ever exist and they serve several important utilities for Safeth and The Safex Platinum Marketplace.[28]

(Emphasis added).

---

[26] Dabek Decl. Ex. Y.

[27] Dabek Decl. Ex. X.

[28] Dabek Decl. Ex. Y.

126.    The striking similarities are prevalent throughout the rest of the Safex Platinum white paper.

127.    Defendants have also been publically flaunting the similarities of the Safex Platinum mark and logo to Safex's Trademarks and have been bragging about the damage their infringement has been causing Safex.

128.    For example, on August 6, 2020, a Twitter user accused Mr. Lathus of taking Safex's Logo, changing the color, branding it as Mr. Lathus' own, and threatening to sue Safex for infringement.  Mr. Lathus, replied to this tweet stating that "what [he] is doing is just business" and called Safex "a fraud and a sham."  Later that day, the same Twitter user asked Mr. Lathus "why his project and tokens are named almost [the] same as the safex token / cash", when Mr. Lathus could use "any other name."  Mr. Lathus  responded that "the shoe fit," told the twitter user to "get over it," gloated that he may rebrand "Safeth Cash" to "Safex Platinum Cash," and threatened to "Sue the piss out of dabek for using our likeness."  Mr. Lathus has also tweeted that "Soon safex.io and safex.org will be eliminated due to trademark violations," and, upon Safex's and Mr. Dabek's removal off Twitter, Mr. Lathus tweeted that he was "Very Pleased."[29]

129.    Safex Served Defendants with a formal cease and desist letter stating that they were infringing upon Safex's Trademarks and defaming Safex and Mr. Dabek.  This letter was served on the Defendants on December 29, 2020.[30]

130.    This eleven-page single-spaced cease and desist letter included a comprehensive explanation of the Defendants' wrongdoing against Safex.  The letter included a detailed explanation of Safex's use of the Safex Trademarks, an explanation as to how the Defendants were infringing on Safex's trademarks, and an explanation as to why Defendants' defamatory campaign

---

[29] Dabek Decl. Ex. Z.

[30] A true and correct copy of the cease and desist letter is attached as <u>Exhibit 4</u>.

against Safex is continuing to cause significant reputational and financial harm to Safex.  This cease and desist letter was replete with citations, screenshots, and references to social media posts made by the defendants.

131.    The letter demanded Defendants cease and desist from:

(a)    using the Safex Trademarks;

(b)    publically holding themselves out as the owner of Safex's trademarks;

(c)    making any further misrepresentations to the USPTO; and

(d)    making any further defamatory statements about Safex and Mr. Dabek.

132.    On December 30, 2020, the day after Plaintiffs served the cease and desist letter on Defendants, Defendants revised their trademark application.  Defendants have again made deliberately and unlawfully made false statements to the USPTO in connection with this application.[31]

133.    While the cease and desist letter demanded a response by January 8, 2021, that date came and went with no response by the Defendants.

134.    However, the Defendants acknowledged receipt by continuing their defamatory campaign and other threats on Twitter.

135.    For example, on January 7, 2021, a Twitter handle controlled by Defendants, @IrelandSafex, posted a series of defamatory tweets and other threats against Safex and Mr. Dabek in response to points made by Safex in the cease and desist letter addressed and served upon the Defendants.  @IrelandSafex's twitter profile states "loves SafexPlatinum.com by Safeth.io." Upon information and belief, this Twitter account is controlled by the Defendants.

---

[31] A true and correct copy of Defendants' revised application to the USPTO is attached as Exhibit 5.

136.    In these Tweets, @IrelandSafex claimed that "As a person whom [sic] put out over 60 videos free in support of a public community safe exchange coin I felt that I had every right to use this just as much as the next person."[32]

137.    Defendants continue to falsely accuse Safex and Mr. Dabek of engaging in criminal activity by likening Safex and Mr. Dabek to notorious criminal cryptocurrency enterprises.

138.    On January 7, 2021, @IrelandSafex Twitter account also stated:  "Can you imagine how incredibly stupid it would have been for alphabay or silk roads founders to have used Twitter of FB to advertise their market.  Only safex thinks it can make software that ignores and undermines the us judicial system and then expect its protections."[33]

139.    The Silk Road and AlphaBay were infamous dark web ecommerce platforms utilizing the blockchain where users were able to purchase guns, drugs, prostitution, murders for hire, and child pornography.  Silk Road and its founder Ross Ubricht were taken down by U.S. authorities and Ross Ulbricht was sentenced to life in prison, and AlphaBay faced a similar fate.[34]

140.    On January 13, 2021, Defendants posted screenshots of the cease and desist letter on Twitter.  Defendants also called Safex a "scam" and stated that they contacted Safex's attorneys and accused Mr. Dabek of photoshopping Safex's attorneys' names on the cease and desist letter. Defendants claimed that Safex's attorneys will "probably press charges."[35]  All of this is false.

---

[32] Dabek Decl. Ex. CC.

[33] Dabek Decl. Ex. DD.

[34] *See* "Ross Ulbricht, The Creator And Owner Of The 'Silk Road' Website, Found Guilty In Manhattan Federal Court On All Counts" U.S. DEPARTMENT OF JUSTICE (Feb. 5, 2015), https://www.justice.gov/usao-sdny/pr/ross-ulbricht-creator-and-owner-silk-road-website-found-guilty-manhattan-federal-court; "AlphaBay, the Largest Online 'Dark Market,' Shut Down," U.S. DEPARTMENT OF JUSTICE (July 20, 2017), https://www.justice.gov/opa/pr/alphabay-largest-online-dark-market-shut-down.

[35] Dabek Decl. Ex. EE.

141.    It is clear from these Tweets that they occurred *after* Defendants have been served with a cease and desist letter that Defendants intend to continue their trademark infringement and defamatory campaign.

**C.    Defendants Disseminated False Statements that Safex is a Trademark Infringer and is Operating an "Exit Scam" and Likening Safex to Notorious Cryptocurrency Criminal Organizations**

142.    Defendants also engaged in a defamatory campaign to harm Safex and Mr. Dabek by disseminating false accusations on social media and internet forums and directly to cryptocurrency exchanges, cryptocurrency listing websites, and social media providers.  Some of the Defendants' efforts have resulted in Safex getting delisted from these important platforms, costing Plaintiffs significant reputational harm.

143.    The Defendants' defamatory statements fall in two categories:  (1) statements that Safeth owns the Safex Trademarks; and (2) statements that Safex is an "exit scam" and likening Safex to notorious cryptocurrency criminal organizations.

144.    As described in the previous section, Safeth has disseminated numerous false statements that Safeth owns the Safex Trademarks and that Safex is engaging in trademark infringement.

145.    Safeth has issued false accusations that Safex is a trademark infringer directly to CoinGecko, LiveCoin, and Twitter.

146.    Safeth has also issued false accusations that Safex is a trademark infringer on its various Twitter and Facebook accounts.

147.    Safeth has repeatedly disseminated statements which state that Safex is a "scam" or an "exit scam."  An "exit scam" occurs when a cryptocurrency company raises capital but instead of providing a viable cryptocurrency or completing its business plan, the company simply absconds with the raised capital.

148.    Defendants have incessantly posted allegations on social media accusing Safex of being a "scam" or "exit scam."

149.    On December 24, 2020, Defendants tweeted[36] "Safex dabek took down livecoin to get the fuck out now wgen [sic] it goes back up it will be worse and you won't get funds out do not deposit at livecoin @livecoin_net Safex has hijacked xcalibra is going too!!!!"

150.    That same day, Defendants tweeted "#safexexecitscam jump shipppppppp the boat is sinking!!!!!!!"  Another one of Defendants' Twitter accounts shared this tweet commenting "Warning warning to all @livecoin_net and @safex users this is an exit happening right now DO NOT DEPOSIT WHEN IT GOES BACK UP DO NOT USE XCALIBRA @xcalibrasupport."[37]

151.    These false allegations by Defendants about Safex being involved in an "exit scam" have and will continue to cause significant reputational and financial harm to Safex.

152.    Defendants' allegations that Safex is an "exit scam" is equivalent to publically accusing a hedge fund of operating a Ponzi scheme.

153.    On January 7, 2021, *after* Defendants were served with a cease and desist letter, they published the following on Twitter from their @IrelandSafex Twitter account:  "Can you imagine how incredibly stupid it would have been for alphabay or silk roads founders to have used Twitter of FB to advertise their market.  Only safex thinks it can make software that ignores and undermines the us judicial system and then expect its protections," with pictures of screenshots to four tweets from unknown Twitter users unaffiliated with Safex.[38]

154.    The Silk Road is an infamous dark web platform where users were able to purchase guns, drugs, prostitution, murders for hire, and child pornography.  This website and its founder

---

[36] "Tweeted" means to post something on Twitter through a Twitter account.

[37] *See* Dabek Decl. Ex. FF.

[38] *See* Dabek Decl. Ex. DD.

Ross Ulbricht were taken down by the Federal Bureau of Investigation and the United States Attorney's Office of the Southern District of New York.  Mr. Ulbricht was sentenced to life in prison.[39]

155.    Any person who opts to research these allegations further will likely come across press release by the U.S. Department of Justice (DOJ) announcing the life-sentence conviction of Ross Ulbricht for running what the DOJ described "as the most sophisticated and extensive criminal marketplace on the Internet, serving as a sprawling black-market bazaar where unlawful goods and services, including illegal drugs of virtually all varieties, were bought and sold regularly by the site's users"[40] or the DOJ's press release announcing AlphaBay's shutdown, which described AlphaBay as "the largest criminal marketplace on the Internet, AlphaBay, which operated for over two years on the dark web and was used to sell deadly illegal drugs, stolen and fraudulent identification documents and access devices, counterfeit goods, malware and other computer hacking tools, firearms, and toxic chemicals throughout the world."[41]

156.    The Defendants' likening of Safex to the Silk Road is telling the cryptocurrency industry, in no uncertain terms, that Safex is a criminal enterprise engaged in activities like child pornography, selling firearms, and illicit drugs.  All of these allegations are plainly false and extremely harmful to Plaintiffs' reputation.

157.    These statements are acutely harmful to Safex because it launched an e-commerce marketplace where users purchase goods with cryptocurrency.

---

[39] *See supra* note 27.

[40]"Ross Ulbricht, The Creator And Owner Of The 'Silk Road' Website, Found Guilty In Manhattan Federal Court On All Counts" U.S. DEPARTMENT OF JUSTICE (Feb. 5, 2015), https://www.justice.gov/usao-sdny/pr/ross-ulbricht-creator-and-owner-silk-road-website-found-guilty-manhattan-federal-court.

[41] "AlphaBay, the Largest Online 'Dark Market,' Shut Down," U.S. DEPARTMENT OF JUSTICE (July 20, 2017), https://www.justice.gov/opa/pr/alphabay-largest-online-dark-market-shut-down.

158.    Silk Road and Alpha Bay also launched e-commerce marketplace where users purchase goods in cryptocurrency – except Silk Road and Alpha Bay were criminal enterprises.

159.    Unlike Silk Road and AlphaBay, Safex is a clean company and is not in the business of selling drugs, guns, or any other illegal products.  But Defendants' comparison could confuse the average consumer and lead them to believe that Safex is similar to two criminal cryptocurrency marketplaces.

160.    Safeth's coordinated efforts to accuse of Safex of running an "exit scam" and to have Safex delisted from social media accounts have had a direct effect on Safex's reputation.

161.    Customers and potential customers have been questioning whether Safex is, in fact, an "exit scam" given that there are these allegations posted on social media combined with the fact that Safex's social media accounts have been delisted.

162.    Defendants have also attempted to coerce payments from Safex.  Defendants have posted negative things on social media about Safex, and have encouraged others to do so on their behalf, to further their efforts in coercing payments from Safex.

163.    On September 21, 2019, Defendants posted on the internet forum 4chan, a message titled "Shill Against A Privacy Coin For Pay."  This message stated:  "Hey 4chan, I'm fairly close to being paid off for shilling against a privacy project.  I just need some help…  That's where you guys come in.  I need you to shill against Safex for me.  They're just about to launch and I want to hit them so hard that they HAVE to pay.  Once they pay I'll share my earnings with you.  I'm getting $250k so you'll be richly rewarded."[42]

164.    There have been a multitude of other posts made from Defendants' social media accounts where they:

         (a)      unlawfully use Safex's name and Logo;

---

[42] *See* Dabek Decl. Ex. GG.

(b)     made social media posts urging people to sell Safex Tokens "before it's cease and desist" and claim that Defendants are going to "kill" Safex themselves;

(c)     explicitly state that they are attempting to secure a trademark to drive Safex out of business and to get Safex and persons associated with Safex removed from social media platforms;

(d)     make untrue and outrageous accusations about Safex, Mr. Dabek, persons affiliated with Safex, and the Safex community; and

(e)     wage threats of personal harm towards Mr. Dabek and other persons affiliated with Safex.

165.    Defendants have explicitly made clear that they will not stop until they "kill" Safex.

166.    Defendants' defamatory campaign has also caused significant financial and reputational harm within Washington D.C.

167.    Safex's principal office is located in Washington D.C.  Mr. Dabek oversees the operations of Safex in Washington D.C.  Safex's and Mr. Dabek's professional reputation within Washington D.C. has been significantly harmed as a result of the Defendants' defamatory campaign directed at them.

168.    It will be very difficult, if not impossible, for Safex to sustain its current operations, let alone grow, if Defendants are not enjoined from continuing to pursue their defamatory campaign against Safex. Defendants' explicitly stated goal to "kill the [S]afex market before it could even begin" will ultimately come to fruition.

**D.     Defendants have Caused Irreparable Harm**

169.    Defendants purposely timed their attack to effectuate their goal to "kill the Safex market before it could even begin."

170.    The trademark infringement and defamatory statements came at the very same time that (A) Safex's e-commerce worldwide platform was launched; and (B) investor interest in cryptocurrency is at an all-time high.

171.    If Defendants' conduct does not cease, the loss in investor confidence in Safex and market-share will never be remedied.

172.    On December 23, 2020, the Safex ecommerce platform launched.   A *Yahoo! Finance* report about the Safex Marketplace's launch lists "Washington D.C." as the location of the launch.[43]

173.    However, due to the Defendants' misconduct, during the launch of the Safex Marketplace, Safex's and Mr. Dabek's personal Twitter account was disabled.

174.    The disabling of these Twitter accounts has had disastrous effects on the launch of the Safex ecommerce platform.  It eliminated Safex's and Mr. Dabek's ability to communicate with Safex customers and to promote the Safex ecommerce platform.

175.    Also, during December of 2020 and January of 2021, the prices of cryptocurrencies have dramatically increased.[44]  For example, the price of Bitcoin has increased from $19,051 to $40,209.57 per Bitcoin.[45]  Many other cryptocurrencies have similarly risen in value.  However,

---

[43] *See* "Safex Launches Decentralized E-Commerce Marketplace as SFX Token Appears on Exchanges," YAHOO! FINANCE (December 23, 2020), https://finance.yahoo.com/news/safex-launches-decentralized-e-commerce-151500370.html.

[44] Billy Banrough, "Bitcoin Value Tops Half A Trillion Dollars—Is The Bitcoin Price About To Smash $30,000?," FORBES (December 27, 2020), https://www.forbes.com/sites/billybambrough/2021/12/27/bitcoin-value-tops-half-a-trillion-dollars-is-the-bitcoin-price-about-to-smash-30000/?sh=ec1e8bb82641; Joanna Ossinger, "Bitcoin Soars Above $23,000 as More Wall Street Firms Pile In" BLOOMBERG (Dec. 16, 2020), https://www.bloomberg.com/news/articles/2020-12-17/bitcoin-tops-22-000-and-strategists-say-rally-has-further-to-go; Daniel Roberts, "Bitcoin Breaks $40,000 As 2020 Surge Continues Into New Year" YAHOO! FINANCE (Jan. 7, 2021), https://finance.yahoo.com/news/bitcoin-keeps-hitting-new-records-193106428.html.

[45] *See* Dabek Decl. Ex. HH.

Safex Token and Safex Cash's growth has been hamstrung by the Defendants' efforts to get Safex delisted and its social media accounts suspended.

176.    This unprecedented surge in the price of cryptocurrencies has gotten significant media attention.  In late December 2020, *Forbes* observed that "Bitcoin is on a late December tear, topping off a Santa rally that's seen it add around 50% since the week before Christmas,"[46] and last week, *Yahoo! Finance* observed that the price surge of cryptocurrency has "continued full steam into 2021."[47]

177.    While the public is becoming more and more interested in cryptocurrency and pouring money into the industry, Safex's name and reputation is being tarnished by the Defendants.

178.    Since the nascent stages of cryptocurrency, there has never been a time period in which more investments have poured into cryptocurrency and more buyers are in the market.  It is at precisely this time period that Defendants have decided to ramp up their efforts to disrupt Safex's business and cause maximum harm.

179.    Defendants' behavior and online postings described above has severely disrupted Safex's business and has caused Safex and Mr. Dabek irreparable reputational and financial harm.

180.    Safex's delisting from cryptocurrency listing services has already damaged Safex. Safex Token has lost a presently unknown amount of daily volume and market capitalization due to these delistings.  Further, Safex's delisting from cryptocurrency exchanges and cryptocurrency listing services has caused and will continue to cause Safex and Mr. Dabek significant reputational harm.  Safex's delisting from these platforms signals to consumers in the cryptocurrency industry that Safex and Mr. Dabek are running an illegitimate enterprise and provides credence to

---

[46] *See* Banrough *supra* note 49.

[47] *See* Roberts *supra* note 49.

Defendants' false and baseless claims against Plaintiffs.  Being in an industry that is unfortunately plagued by scams, it may be impossible for Safex and Mr. Dabek to re-gain consumer trust.  The longer Defendants' conduct continues, the more difficult it will be to salvage Safex's and Mr. Dabek's reputation.

181.    Mr. Dabek personally owns or controls approximately 31,480,711 Safex Tokens and 8,344,163 Safex Cash.  The Defendants conduct has caused a diminution in value of the price of the Safex Token and Safex Cash and the losses continue to mount as the reputational damages increase.

182.    Further, Defendants baseless accusations that Safex and Mr. Dabek are frauds and are engaged in an "exit scam," that Safex and Mr. Dabek are trademark infringers, that Safex and Mr. Dabek are engaged in criminal activity, and other outrageous and baseless accusations have caused and will continue to cause substantial irreparable harm to Safex's reputation with cryptocurrency exchanges and cryptocurrency services, current and potential consumers, members of the Safex community, and the general public.  A robust community invested in Safex's development is crucial to Safex's success.  Indeed, as a non-profit organization, donations of time and money from members of the Safex community and the general public at large are necessary to Safex's current operations and growth.  These baseless accusations have driven current and potential consumers away from Safex and its community and continue to harm Safex to this day. It will require a monumental effort on Safex's end to regain the trust of these consumers and of the general public at large.

183.    Safex has also been harmed by the Defendants contacting representatives of social media companies claiming to be the owner of the Safex Trademarks in an attempt to get Safex and people affiliated with Safex removed from these platforms.  Defendants' attempts have been successful as a number of social media accounts affiliated with Safex and Mr. Dabek have been removed from social media.  Safex's community and consumer base is nearly completely online,

so it is essential for Safex and Mr. Dabek to be able to engage with the Safex community and current and potential Safex consumers and promote Safex through social media. Safex's removal from social media platforms may also give the impression to members of the Safex community and current and potential Safex consumers that Safex is not a legitimate enterprise and may greatly lessen consumer confidence in Safex. Thus, Defendants' successful efforts to deny Safex access to certain social media platforms has caused significant harm to Safex and Mr. Dabek.

184.  The Defendants' conduct has also harmed Safex's and Mr. Dabek's social media reputation and exposure, which has a direct correlation to the viability of Safex, Safex Tokens, and Safex Cash.

185.   Tweets from Safex and Mr. Dabek's Twitter accounts were regularly getting viewed by hundreds of thousands of people prior to being removed off Twitter. The viewership of Safex's and Mr. Dabek's Tweets have sometimes reached into the millions in a given month. Now, because of the Defendants' successful efforts to get Safex and Mr. Dabek removed off of Twitter, Safex and Mr. Dabek cannot reach these millions of Twitter users that it was previously able to reach during a period of unprecedented growth in the cryptocurrency industry.

### Count One
### (Trademark Infringement under the Lanham Act, 15 U.S.C. § 1125(a))

186.  Plaintiffs incorporate by reference the allegations in the preceding paragraphs of the Complaint.

187.  By virtue of having first used and continuing to use the Safex Trademarks in commerce in the United States, including in Washington D.C., Plaintiffs have acquired common law trademark rights in the Safex Trademarks.

188.  Defendants have used and continues to use the Accused Trademarks that are confusingly similar to Plaintiffs' Safex Trademarks without Plaintiffs' consent.

189.    Defendants' unauthorized use in commerce of marks that are confusingly similar to Plaintiffs' Safex Trademarks have caused and is likely to continue to cause confusion or mistake, or to deceive consumers and potential consumers, the public, and the trade concerning an affiliation, connection, or association between Plaintiffs and Defendants when there is no such affiliation, connection or association.

190.    Defendants' activities, alleged herein, have a substantial economic effect on interstate commerce.

191.    Defendants' activities, alleged herein, constitute trademark infringement under 15 U.S.C. § 1125(a).

192.    Plaintiffs have been irreparably injured by Defendants' trademark infringement in violation of 15 U.S.C. § 1125(a).

193.    Defendants acted willfully, with knowledge of Plaintiffs' rights in the Safex mark and Logo, and those acts constitute a willful violation of the Lanham Act.

194.    This is an exceptional case that entitles plaintiffs to an award of attorney's fees under 15 U.S.C. § 1117(a).

195.    As a result of Defendants' trademark infringement, Plaintiffs have suffered irreparable injury and, unless Defendants' infringement is enjoined by the Court, Plaintiffs will continue to suffer irreparable harm.  There is no adequate remedy at law for the harm caused by Defendants' infringing conduct.

## Count Two
### (Declaratory Judgment under 28 U.S.C. § 2201)

196.    Plaintiffs incorporate by reference the allegations in the preceding paragraphs of the Complaint.

197.    There is an actual, present and justiciable controversy between the parties regarding whether the Defendants' use of the Accused Trademarks infringes on Plaintiffs' rights to the Safex Trademarks.

198.    Plaintiffs seek a declaration from this Court that Safex is the rightful owner of the Safex Trademarks and that Defendants' use of the Accused Trademarks infringes upon Safex's rights to the Safex's Trademarks.

## Count Two
## (Common Law Trademark Infringement)

199.    Plaintiffs incorporate by reference the allegations in the preceding paragraphs of the Complaint.

200.    By virtue of having used and continuing to use the Safex Trademarks in commerce, including in Washington D.C., Plaintiffs have acquired common law trademark rights in the Safex Trademarks.

201.    Defendants', with full knowledge of Plaintiffs' prior rights in the Safex Trademarks, and of the valuable goodwill associated therewith, have used and continues to use the Accused Trademarks that are confusingly similar to Plaintiffs' Safex Trademarks without Plaintiffs' consent.

202.    Defendants' unauthorized use in commerce of marks that are confusingly similar to Plaintiffs' Trademarks have caused and is likely to continue to cause confusion or mistake, or to deceive consumers and potential consumers, the public, and the trade concerning an affiliation, connection, or association between Plaintiffs and Defendants when there is no such affiliation, connection or association.

203.    Defendants' use of the infringing marks as described above has impaired, is impairing, and, unless enjoined by this Court, will continue to impair Plaintiffs' reputation under

its trademark and has caused, is causing, and unless enjoined by the Court, will continue to cause injury and damage to Plaintiffs for which Plaintiffs are entitled to relief under the common law.

204.    The acts of the Defendants, alleged herein, constitute trademark infringement in violation of the common law of Washington D.C.

205.    Plaintiffs have been irreparably injured by Plaintiffs trademark infringement in violation of the common law of Washington D.C.

206.    Defendants acted willfully, with knowledge of Plaintiffs' rights in the Safex mark and Logo, and those acts constitute a willful violation of the common law of Washington D.C. .

207.    As a result of Defendants' trademark infringement, Plaintiffs have suffered irreparable injury and, unless Defendants' infringement is enjoined by the Court, Plaintiffs will continue to suffer irreparable harm.  There is no adequate remedy at law for the harm caused by Defendants' infringing conduct.

### Count Three
### (Defamation and Defamation Per Se)

208.    Plaintiffs repeat and reallege each and every allegation of the Complaint as if herein again set forth in full.

209.    Defendants' actions as alleged herein constitute defamation.  Defendants have knowingly and intentionally published unprivileged, false, defamatory statements of and concerning Plaintiffs.

210.    Defendants published these statements out of malice, with the expressly-stated intent to "kill[] the [S]afex market before it could even begin."

211.    Defendants' false statements have caused substantial and irreparable harm to Plaintiffs' reputation with cryptocurrency exchanges and cryptocurrency listing services, current and potential consumers, members of the Safex community, and the general public.  Defendants' baseless accusations have driven current and potential consumers away from Safex and its

community and it will require a monumental effort on Safex's end to regain the trust of these consumers and of the general public at large.

212.    Defendants' false statements constitute defamation per se under the common law of Washington D.C. because they defame Plaintiffs in Plaintiffs' business and trade.

213.    Defendants' acts of defamation have caused substantial damages to Plaintiffs.

214.    Based upon Defendants' tortious acts of defamation per se, Plaintiffs are entitled to recover presumed damages, as well as their actual and consequential damages against Defendants in a specific amount to be proven at trial.

215.    Defendants have knowingly and intentionally engaged in conduct of a malicious, oppressive, or fraudulent nature and have knowingly made false statements of and concerning Plaintiffs, thereby entitling Plaintiffs to an award of punitive damages.

## Count Four
## (False Light Invasion of Privacy)

216.    Plaintiff Daniel Dabek repeats and realleges each and every allegation of the Complaint as if herein again set forth in full.

217.    Defendants have engaged in a defamatory campaign to harm Mr. Dabek and his business, Safex, by disseminating false accusations on social media and internet forums and directly to cryptocurrency exchanges, cryptocurrency listing services, and social media providers.

218.    The false statements that Defendants have been disseminating on social media are about and/or concern Safex and Mr. Dabek.

219.    The false statements by Defendants have placed Safex and Mr. Dabek in a false light that would be offensive to a reasonable person.

220.    For example, Defendants have been incessantly posting allegations on social media and internet forums that Safex and Mr. Dabek are engaged in an "exit scam." These allegations that Safex, a company in the cryptocurrency industry, is an "exit scam" would be the equivalent

of publically accusing a hedge fund of being a Ponzi scheme.  Unfortunately, the nascent cryptocurrency industry has been plagued by scams perpetrated by scrupulous operators, and consumers are rightly wary.  Even though the accusations are plainly false in Safex's case, by Defendants' design, these false accusations lower Safex's standing in the community.  Accusations have caused and will continue to cause substantial irreparable harm to Safex's and Mr. Dabek's reputation with cryptocurrency exchanges, cryptocurrency listing services, current and potential consumers, members of the Safex community, and the general public.

221.    Defendants have also been incessantly posting allegations on social media platforms and internet forums comparing Safex to Silk Road and AlphaBay.  Defendants' allegations comparing Safex to Silk Road and AlphaBay are outrageous, baseless, and false.  The Defendants' likening of Safex to the Silk Road and AlphaBay is telling the cryptocurrency industry, in no uncertain terms, that Safex is a criminal enterprise engaged in activities like child pornography, selling firearms, and illicit drugs.  All of these allegations are plainly false and extremely harmful to Safex's and Mr. Dabek's reputation.

222.    The acts of the Defendants, alleged herein, constitute false light invasion of privacy in violation of the common law of Washington D.C.

223.    The Defendants' efforts to disseminate false accusations about Safex and Mr. Dabek on social media platforms and internet forums have resulted in Safex getting delisted from these important platforms, costing Safex potentially millions of dollars of volume in Safex Token and Safex Cash and significant reputational harm to Mr. Dabek.

## Count Five
### (Unfair Competition)

224.    Plaintiffs' repeat and reallege each and every allegation of the Complaint as if herein again set forth in full.

225.    Defendants are competing in the cryptocurrency industry with Plaintiffs.

226.    Defendants further intend to compete with Plaintiffs in the cryptocurrency industry.

227.    As set forth in more detail in this Complaint, Defendants have unlawfully used the Safex Trademarks in commerce in violation of Safex's rights to the Safex Trademarks.  Defendants have willfully infringed on the Safex Trademarks to confuse consumers about the origin of the Safex Trademarks.

228.    As set forth in more detail in this Complaint, Defendants also engaged in a defamatory campaign to harm Safex and Mr. Dabek by disseminating false accusations on social media and internet forums and directly to cryptocurrency exchanges, cryptocurrency listing services, and social media providers.  Some of the Defendants' efforts have resulted in Safex getting delisted from these important platforms, costing Safex potentially millions of dollars of volume in Safex Token and Safex Cash and in financial donations and significant reputational harm.

229.    As set forth in more detail in this Complaint, Defendants have engaged in conduct designed to get Safex delisted from cryptocurrency exchanges and cryptocurrency listing services. Some of Defendants' efforts to get Safex delisted from these exchanges and listing services have been successful.  Getting delisted from cryptocurrency exchanges and cryptocurrency listing services causes significant financial and reputational harm to cryptocurrency companies like Safex and related tokens like Safex Tokens because these are the primary avenues in which cryptocurrency consumers can research and exchange cryptocurrencies.

230.    As set forth in more detail in this Complaint, Defendants have contacted representatives of social media companies claiming to be the owner of the Safex Trademarks in an attempt to get Safex and Mr. Dabek removed from these platforms.  Some of the Defendants' efforts to get Safex and Mr. Dabek removed from these platforms have been successful. Safex's community and consumer base is nearly completely online, so it is essential for Safex and Mr. Dabek to be able to engage with the Safex community and current and potential Safex consumers

and promote Safex through social media.  Safex's removal from social media platforms may also give the impression to members of the Safex community and current and potential Safex consumers that Safex is not a legitimate enterprise and may greatly lessen consumer confidence in Safex.

231.    As set forth in more detail in the Complaint, Defendants have posted negative things on social media about Safex, and have encouraged others to do so on their behalf, to coerce payments from Safex.

232.    As set forth in more detail in the Complaint, Defendants have engaged in other unfair and anti-competitive conduct which has caused significant financial and reputational harm to Plaintiffs.

233.    Defendants' pattern of activities set forth in the Complaint constitutes tortious unfair competition under the common law of the District of Columbia.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs respectfully request that this Court enter judgment in favor on each and every claim for relief set forth above and award relief including, but not limited to an order:

1.    Entering a Temporary Restraining Order, preliminary injunction, and permanent injunction enjoining Defendants from:  (1) using in commerce or in connection with any goods or services any mark, name, or design that creates a likelihood of confusion with Plaintiffs' Safex mark and/or Logo and from engaging in any other acts of trademark infringement; (2) publically holding themselves out as the owner of Safex's trademarks making any further misrepresentations to the USPTO; and (3) making any further defamatory statements about Safex and Mr. Dabek.

2.    Finding that: (1) Defendants have committed trademark infringement in violation of Section 43(a) of the Lanham Act (15 U.S.C. § 1125(a)); and (2) Defendants are

liable for D.C. common law trademark infringement, defamation and defamation per se, and unfair competition against the Plaintiffs and that Defendants are liable for D.C. common law false light invasion of privacy against Mr. Dabek.

3.     Finding that this is an exceptional case that entitles Plaintiffs to recover attorneys' fees under the Lanham Act (15 U.S.C. § 1117(a));

4.     Entering a declaratory judgment that Safex is the owner of the Safex Trademarks and that Defendants' use of the Accused Trademarks infringes upon Safex's rights to the Safex's Trademarks;

5.     Awarding direct damages in an amount to be determined at trial, but significantly more than $75,000.

6.     Awarding general, presumed or assumed damages as a result of Defendants' trademark infringement, Defendants' false and defamatory publications concerning Plaintiffs, and other tortious conduct Defendant have committed against the Plaintiffs;

7.     Awarding damages for Defendants' knowing and intentional publication of defamation per se of Plaintiffs;

8.     Awarding punitive damages;

9.     Awarding any other damages Plaintiffs are entitled to by law;

10.    Awarding attorneys' fees and costs incurred by Plaintiffs;

11.    Granting such other relief in favor of Plaintiffs and against the Defendants that the Court or other trier of fact deems just and proper under the circumstances.

## **JURY DEMAND**

Plaintiffs demand trial by jury of the causes of action stated herein.

Dated: January 18, 2021                                  **MCDERMOTT WILL & EMERY LLP**

                                                         By: /s/ *Llewelyn Engel*

                                                         Joseph B. Evans (*pro hac vice* motion
                                                         forthcoming)
                                                         Christopher Whalen (*pro hac vice* motion
                                                         forthcoming)
                                                         340 Madison Avenue
                                                         New York, New York 10173
                                                         (212) 547-5400
                                                         jbevans@mwe.com
                                                         chwhalen@mwe.com

                                                         Llewelyn Engel (No. 1615840)
                                                         David Mlaver (No. 1030609)
                                                         500 North Capitol St NW,
                                                         Washington, DC 20001
                                                         (202) 756-8000
                                                         lengel@mwe.com
                                                         dmlaver@mwe.com

                                                         *Attorneys for the Plaintiffs Safex*
                                                         *Foundation, Inc., Safe Exchange*
                                                         *Foundation LLC, and Daniel Dabek*