**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| SAFEX FOUNDATION, INC., *et al.*, | |
| Plaintiffs, | Civil Action No. 21-cv-161 |
| v. | Chief Judge Beryl A. Howell |
| SAFETH, LTD., *et al.*, | |
| Defendants. | |

## MEMORANDUM OPINION

Plaintiffs Daniel Dabek, Safex Foundation, Inc., and Safe Exchange Foundation, LLC, brought the instant lawsuit seeking to enjoin *pro se* defendants Joseph Lathus and Cynthia Lathus (together "the Lathuses") and Safeth, Ltd. ("Safeth"), a limited company owned and controlled by the Lathuses, from infringing on plaintiffs' trademarks and from disseminating written or oral statements that Safex or Mr. Dabek are engaged in a scam or any other criminal activity.  Compl. at 38–39, ECF No. 1; *see also* Pl.'s Mot. Prelim. Inj. at 1, ECF No. 4.  Plaintiffs develop cryptocurrencies and a cryptocurrency-based e-commerce platform, and allege that defendants infringed plaintiffs' trademark, used the trademark to market their own competing cryptocurrency and cryptocurrency-based e-commerce exchange, and defamed plaintiffs by publicly stating both that *plaintiffs* are infringing *defendants'* trademark, and that plaintiffs are engaged in criminal activity.  On January 27, 2021, following a hearing on January 26, 2021, at which plaintiffs and defendants both participated, *see* Min. Entry (Jan. 26, 2021), a temporary restraining order was entered enjoining defendants from infringing on plaintiffs' trademark and from publicly stating that plaintiffs were infringing on defendants' trademark, *see* Amended Temporary Restraining Order, ECF No. 20.  Upon consideration of additional submissions from the parties, a preliminary injunction substantively identical to the temporary restraining order

1

was entered roughly eight weeks later, on March 26, 2021, *see* Order ("Preliminary Injunction") at 1–2, ECF No. 31.

Now pending is plaintiffs' Motion for Default Judgment, ECF No. 35, against defendant Safeth Ltd., for whom no counsel has entered an appearance. Additionally, the parties have agreed that a permanent injunction, equivalent in scope to both the temporary restraining order and preliminary injunction, should be entered against the Lathuses. For the following reasons, that permanent injunction will be entered, and plaintiffs' Motion for Default Judgment against Safeth is granted in part and denied in part, largely paralleling the terms of the permanent injunction against the Lathuses.

## I.   BACKGROUND

The factual and procedural background of the instant lawsuit has been exhaustively described in a previous opinion, *see Safex Found., Inc. v. Safeth Ltd.*, Civil Action No. 21-cv-161, 2021 WL 1167266, at *2–5 (D.D.C. Mar. 26, 2021), and will not be repeated here, except to the extent necessary to resolve plaintiffs' pending Motion for Default Judgment and enter the agreed-upon permanent injunction against the Lathuses.

Plaintiffs filed the instant lawsuit on January 18, 2021, seeking to enjoin defendants from infringing on plaintiffs' trademarks and from disseminating written or oral statements that Safex or Dabek are engaged themselves in trademark infringement or in criminal activity. Compl. at 38–39; *see also* Pl.'s Mot. Prelim. Inj. at 1. Plaintiffs sought a temporary restraining order and a preliminary injunction. Proceedings as to each request are described separately, followed by discussion of procedural developments since the entry of the preliminary injunction.

### A. Plaintiff's Motion for a Temporary Restraining Order

On January 26, 2021, at a hearing held on plaintiffs' motion for a temporary restraining order, defendants represented themselves *pro se*. *See* Min. Entry (Jan. 26, 2021).[1] At the outset of the hearing, defendants were orally advised that "the organizational entity that [the Lathuses] . . . are responsible for [and] officers of, Safeth, Ltd., is required to have counsel in this case." Hr'g Tr. at 4:24–5:2 (Jan. 26, 2021), ECF No. 22. In response, defendants requested that counsel for Safeth be appointed, but the Court informed plaintiffs that it "ha[d] no power to appoint counsel for an organizational entity in a civil case." *Id.* at 5:4–7.

Following the hearing, plaintiffs' motion for a temporary restraining order was granted in part and denied in part, based on a determination that plaintiffs met the requirements for temporary injunctive relief as to defendants' alleged trademark infringement and their public statements that plaintiffs were infringing defendants' trademark, but not as to defendants' allegedly defamatory statements that Safex was an "exit scam" and Safex's products would facilitate illegal transactions, in particular because plaintiffs had not met their burden to show that such statements were false. *See* Hr'g Tr. at 67:11–22, 74:6–75:1. Accordingly, a temporary restraining order was entered enjoining defendants from (1) "[u]sing in commerce or in connection with any good or service plaintiffs' 'Safex' mark and logo," including any "mark, name, or design that creates a likelihood of confusion with plaintiffs' 'Safex' mark and logo"; (2) "[d]isseminating, on . . . [any] public forums, any written or oral statements that plaintiffs are infringing upon defendants' trademarks"; and (3) "making . . . misrepresentations to the U.S.

---

[1] Although defendants had not filed a formal opposition to plaintiffs' Motion for a Temporary Restraining Order, between January 20, 2021 and January 25, 2021, defendant Joey Lathus sent the Court nine emails, which the Court docketed under seal. *See* Defs.' Sealed Document, ECF No. 15. Nearly all these emails sent to the Court included links to third party websites and attached image files, consisting primarily of screenshots of online news articles and social media posts. Thus, although defendants did not file a formal opposition, they made their views known, at least as to some of the claims of the Complaint, primarily relating to plaintiffs' allegations of defamation.

Patent and Trademark Office" concerning defendants' infringing trademark. Amended Temporary Restraining Order at 1–2.

### B. Defendant Safeth's Default

Both before and after the January 26, 2021 hearing and the entry of the temporary restraining order, defendants were repeatedly advised that defendant Safeth, as a limited company, "must be represented by counsel in this matter, . . . and is subject to entry of default if no counsel registers an appearance" Min. Order (Jan. 25, 2021) (quoting *Greater Se. Cmty. Hosp. Found. v. Potter*, 586 F.3d 1, 4 (D.C. Cir. 2009)); *see also* Min. Order (Feb. 3, 2021) (same); *Safex Found., Inc.*, 2021 WL 1167266, at *1 n.1 (same). Nevertheless, no counsel has entered an appearance for Safeth, more than three and a half months after the initiation of the instant lawsuit. On February 23, 2021, plaintiffs accordingly filed an Affidavit for Default, ECF No. 26, against defendant Safeth, and the Clerk of the Court subsequently, on March 11, 2021, entered a default against Safeth, *see* Entry of Default, ECF No. 29.

### C. Plaintiffs' Motion for a Preliminary Injunction

Meanwhile, on February 3, 2021, following entry of the temporary restraining order, a scheduling order governing resolution of plaintiffs' motion for a preliminary injunction was entered, which directed, *inter alia*, defendants to submit any opposition by February 17, 2021. Min. Order (Feb. 3, 2021). In response, defendants submitted a series of emails, albeit late, responding to plaintiffs' motion, which emails have been docketed under seal by the Court. *See* Min. Order (Mar. 26, 2021); Defs.' Sealed Document ("Defs.' Mar. 10, 2021 Emails"), ECF No. 30. Those submissions from defendants did not argue against the entry of a preliminary injunction as to plaintiffs' trademark-related claims and instead objected only to a preliminary injunction as to plaintiffs' defamation claims based on defendants' statements that plaintiffs were

engaged in wrongdoing. *See Safex Found., Inc.*, 2021 WL 1167266, at *1 n.2, *4; Defs.' Mar. 10, 2021 Emails.

Likewise, in two earlier separate submissions notifying the Court of their steps taken to comply with the temporary restraining order, defendants stated that they "apologize[d]" for their inadvertent infringement of Safex's trademark, had "redesigned [their] . . . logo to ensure" they complied with the Court's order to cease infringing Safex's trademark, and "happily took down any words or images that might" infringe plaintiffs' trademark "from all of [defendants'] sites and social media accounts." Defs.' Sealed Document ("Defs.' Jan. 26, 2021 Email") at 1, ECF No. 23. They also informed the Court that they "are fine not using the [Safex] logo or word safex," *id.*, and "have not and will not . . . mention the word safex publicly ever again." Defs.' Letter at 1, ECF No. 24.

On March 26, 2021, a preliminary injunction, substantively identical to the temporary restraining order already in place, was entered against defendants. *See* Preliminary Injunction at 1–2.[2] In an accompanying opinion, the Court explained that "[t]he status quo remain[ed] largely unchanged since the entry of the temporary restraining order," and that, accordingly, the analysis with respect to plaintiffs' motion for a preliminary injunction was largely the same as the analysis justifying its ruling on their motion for a temporary restraining order. *Safex Found., Inc.*, 2021 WL 1167266, at *1.[3]

---

[2] The temporary restraining order had remained in place in the interim, past the ordinary 14-day limit, *see* FED. R. CIV. P. 65(b)(2), as the Court had "determined that there is good cause for an extension" of the temporary restraining order, Min. Order (Feb. 3, 2021).

[3] The one significant difference, however, was with respect to plaintiffs' likelihood of success on the merits of their defamation claim premised on defendants' statements concerning plaintiffs' criminality or other wrongdoing. *See Safex Found., Inc.*, 2021 WL 1167266, at *9–12, *14–18. Although the Court reiterated that plaintiffs had not met their burden to show that they were likely to prove that these statements were false—a necessary element of their defamation claim, *see id.* at *17; *see also Oparaugo v. Watts*, 884 A.2d 63, 76 (D.C. 2005) (stating legal standard for plaintiff to succeed on defamation claim under District of Columbia law)—that analysis was now couched in a determination that plaintiff Dabek is a limited-purpose public figure, *see id.* at *9–12. The Court determined, as a matter of law, *see id.* at *10 (citing *Kahl v. Bureau of Nat'l Affairs, Inc.*, 856 F.3d 106,

### D. Procedural Developments Since Entry of Preliminary Injunction and Plaintiffs' Pending Motion for Default Judgment

In light of defendants' submission to the Court stating that they "are fine not using the [Safex] logo or word safex," Defs.' Jan. 26, 2021 Email at 1, and "have not and will not . . . mention the word safex publicly ever again," Defs.' Letter at 1, on March 26, 2021, the parties were directed via minute order to "submit . . . their views on whether the preliminary injunction in this case may be converted into a permanent injunction," including whether, in the parties' views, any further proceedings were necessary and whether any modifications to the preliminary injunction were warranted or necessary. Min. Order (Mar. 26, 2021). On the same day, consistent with *Fox v. Strickland*, 837 F.2d 507, 509 (D.C. Cir. 1988), and *Neal v. Kelly*, 963 F.2d 453, 456 (D.C. Cir. 1992), the Court advised defendants, still representing themselves *pro se*, of the necessity of responding to this minute order. *See Fox/Neal* Order, ECF No. 33. Specifically, the Court explained to defendants that they "have an opportunity to present their views on whether the preliminary injunction should be converted into a permanent injunction, by filing a formal statement on the docket." *Id.* at 2. The Court further admonished that "[i]f defendants do not respond to the Court's minute order, . . . the Court may, in its discretion, conclude that they do not object to the entry of a permanent injunction," and that, more generally, it "may choose to treat as conceded any unopposed arguments by plaintiffs and, if warranted, enter a permanent injunction against defendants." *Id.* As such, defendants were

---

114 (D.C. Cir. 2017)), that the legitimacy of Safex's products was a genuine public controversy, plaintiffs were at the center of the controversy, and defendants' statements alleging plaintiffs' criminality and other wrongdoing were germane to that controversy, *see id.* at *10–12, thereby satisfying the legal standard for a limited-purpose public figure, *see Kahl*, 856 F.3d at 114 (citing *Jankovic v. Int'l Crisis Grp.*, 822 F.3d 576, 585 (D.C. Cir. 2016))). The Court then determined both that plaintiffs would be "unable, as a matter of law, to demonstrate that defendants acted with actual malice," *Safex Found., Inc.*, 2021 WL 1167266, at *16, as required by the determination that Dabek is a limited-purpose public figure, and that, in any event, "this category of statements does not present a verifiable issue of fact and therefore is not actionable under defamation law," *id.*

warned, "any failure to respond in a timely manner carries the risk that a permanent injunction will be entered against defendants." *Id.*

On April 8, 2021, following the direction of the Court, defendants submitted their views via email, reiterating that they had "created a new logo[] . . . of [their] own" and stating that they "agree[] to never use the mark or word again," "have no interest or intention of using the name or mark[,] even in discussion[,] now or . . . in the future," and "want to end this" lawsuit without "further action." Defs.' Sealed Document ("Defs.' Apr. 8, 2021 Email") at 1, ECF No. 36. Plaintiffs also provided their views on the issue, stating that they "have submitted uncontroverted evidence showing success on the merits of their trademark infringement and defamation claims for statements regarding Plaintiffs' trademark infringement" and accordingly "are entitled to a permanent injunction enjoining Defendants . . . from engaging in infringing and defamatory activities against Plaintiffs." Pls.' Resp. Mar. 26, 2021 Minute Order ("Pls.' Resp.") at 1, ECF No. 34. They also noted, citing defendants' April 8, 2021 email, that defendants "ha[d] apparently conceded that a permanent injunction is appropriate in this case." *Id.* at 2.

On the same day plaintiffs submitted their views on the conversion of the preliminary injunction to a permanent injunction, plaintiffs also filed the pending Motion for Default Judgment against Safeth, *see* Pls.' Mot., on the basis that Safeth had failed to appear, with no counsel having entered an appearance on Safeth's behalf in spite of six separate warnings from the Court that it needed to be represented by counsel, *see* Def.'s Mem. at 1–5. Defendants were directed to show cause why the motion for default judgment should not be granted. Min. Order (Apr. 12, 2021). In response, defendant Joey Lathus submitted ten emails over the span of ten days, which emails have been docketed, under seal, by the Court, *see* Min. Order (Apr. 26,

7

2021); Defs.' Sealed Document, ECF No. 37, although no counsel entered an appearance on behalf of Safeth, against whom plaintiffs' motion for default judgment was filed.[4]

## II. LEGAL STANDARD

"Default judgments are not favored by modern courts," in part because courts are "reluctant to enter and enforce judgments unwarranted by the facts." *Jackson v. Beech*, 636 F.2d 831, 835 (D.C. Cir. 1980). Nevertheless, the Federal Rules of Civil Procedure "provide for default judgments . . . [to] safeguard plaintiffs 'when the adversary process has been halted because of an essentially unresponsive party,'" and to protect "'the diligent party . . . lest he be faced with interminable delay and continued uncertainty as to his rights.'" *Mwani v. bin Laden*, 417 F.3d 1, 7 (D.C. Cir. 2005) (quoting *Jackson*, 636 F.2d at 836). Pursuant to Federal Rule of Civil Procedure 55(a), "[w]hen a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend, and that failure is shown by affidavit or otherwise, the clerk must enter the party's default." FED. R. CIV. P. 55(a); *see* 10A CHARLES ALAN WRIGHT ET AL., FEDERAL PRACTICE AND PROCEDURE § 2682 (4th ed. 2018) ("When the prerequisites of Rule 55(a) are satisfied, an entry of default may be made by the clerk without any action being taken by the court . . . [as long as] the clerk [has] examine[d] the affidavits filed and [found] that they meet the requirements of Rule 55(a)."). "[A]n entry of default is merely a formal matter and does not constitute the entry of judgment." *Id*.

"[T]he entry of a default judgment is not automatic" following entry of default, and "a court should satisfy itself that it has personal jurisdiction before entering judgment against an absent defendant." *Mwani*, 417 F.3d at 6 (footnote omitted). A plaintiff seeking a default

---

[4] Lathus's emails in response to the Court's order to show cause largely reiterated arguments made in opposition to plaintiffs' motion for a preliminary injunction. *See* Min. Order (Apr. 26, 2021); Defs.' Sealed Document, ECF No. 37.

judgment bears the burden of making a *prima facie* showing that the Court has personal jurisdiction over the absent defendant. *Id.* at 6–7. If the court determines that it may exercise personal jurisdiction over the absent defendant, whether to grant a motion for default judgment against that defendant is in the court's discretion. *See Jackson*, 636 F.2d at 835–36.

### III.   DISCUSSION

Plaintiffs' Motion for Default Judgment against Safeth is addressed following consideration of the parties' responses to the Court's March 26, 2021 minute order, concerning conversion of the preliminary injunction into a permanent injunction.

#### A.   Permanent Injunction Against the Lathuses

As described, *see supra* Part I.D, in response to the Court's direction to the parties to provide "their views on whether the preliminary injunction in this case may be converted into a permanent injunction," Min. Order (Mar. 26, 2021), plaintiffs stated their assent, *see* Pls.' Resp., and defendants likewise indicated their agreement "to never use the [Safex] mark or word again . . . not even in discussion," and their desire to "end this" lawsuit without "further action." Defs.' Apr. 8, 2021 Email at 1. The parties thus agree that a permanent injunction should be entered against the Lathuses, and, taken together, the parties' responses are substantively equivalent to a joint motion for entry of final judgment and a permanent injunction, which motions courts routinely grant, including for permanent injunctive relief. *See generally, e.g.*, *WMATA v. Local 689, Amalgamated Transit Union*, 638 Fed. Appx. 3, 4 (D.C. Cir. 2016); *Nat. Res. Def. Council v. Pena*, 147 F.3d 1012, 1018–19 (D.C. Cir. 1998). Accordingly, a permanent injunction, equivalent in scope to the preliminary injunction, will, with the parties' consent, be entered against the Lathuses.

### B. Plaintiffs' Motion for Default Judgment Against Safeth

The propriety of a default judgment against defendant Safeth is considered next, following determination of whether the Court has personal jurisdiction over Safeth.

#### 1. *Personal Jurisdiction*

"[A] court should satisfy itself that it has personal jurisdiction before entering judgment against an absent defendant," *Mwani*, 417 F.3d at 6 (footnote omitted), which "jurisdiction over the defendant is coextensive with that of a District of Columbia court," *Helmer v. Doletskaya*, 393 F.3d 201, 205 (D.C. Cir. 2004); *see also* D.C. Code § 13-423 (District of Columbia long-arm statute). The Court's personal jurisdiction over Safeth with respect to plaintiffs' trademark-infringement claims and defamation claims will be considered separately.

#### a. Plaintiffs' Trademark-Infringement Claim

Plaintiff's trademark-infringement claim is premised on the allegation that Safeth, which has its principal place of business in Colorado, used Safex's trademark and logo to offer its cryptocurrency products for sale online, including in Washington DC, where plaintiffs have their principal place of business. *See* Compl. ¶¶ 33–35, 92; *Safex Found., Inc.*, 2021 WL 1167266, at *3, *6–7. Subsection (a)(1) of the District of Columbia's long-arm statute confers personal jurisdiction over any person "as to a claim for relief arising from the person's . . . transacting any business in the District of Columbia." D.C. Code § 13-423(a)(1); *see also, e.g.*, *Forras v. Rauf*, 812 F.3d 1102, 1106 (D.C. Cir. 2016) (citing D.C. Code § 13-423(a)).[5] Thus, two requirements must be satisfied for a claim against a defendant to fall within subsection (a)(1) of the District of Columbia's long-arm statute: (1) the defendant must have conducted business in the District of

---

[5] For purposes of this provision of the D.C. Code, the statutory term "person" includes "a corporation, partnership, association, or any other legal or commercial entity," D.C. Code § 13-421, such as defendant Safeth.

10

Columbia, and (2) plaintiff's claim against the defendant must arise from that business. *See Forras*, 812 F.3d at 1102 (citing *Crane v. Carr*, 814 F.2d 758, 762 (D.C. Cir. 1987)).

Plaintiffs' trademark-infringement claim against Safeth satisfies both requirements. First, Safeth's online sale of its cryptocurrency products in the District of Columbia meets the low threshold for "transacting *any* business," D.C. Code § 13-423(a)(1) (emphasis added). Second, plaintiffs' trademark-infringement claim against Safeth arises from that business, as plaintiffs allege that Safeth's infringing use of Safex's trademark occurred in the course of Safeth's online sale of its own competing cryptocurrency products. *See* Compl. ¶¶ 188–89; *Safex Found., Inc.*, 2021 WL 1167266, at *3. Indeed, that claim is inextricably intertwined with Safeth's online sale of its products in Washington, DC, as the likelihood of confusion between plaintiffs' trademark and Safeth's infringing mark, a necessary prong of the trademark-infringement analysis, depends on the fact that Safeth used Safex's trademark in order to sell "functionally similar products." *Safex Found., Inc.*, 2021 WL 1167266, at *7. Accordingly, plaintiff's trademark-infringement claim satisfies subsection (a)(1) of the District of Columbia's long-arm statute, and so the Court may exercise personal jurisdiction over Safeth with respect to that claim.

### b. Plaintiffs' Defamation Claims

The Court's personal jurisdiction over Safeth with respect to plaintiffs' defamation claims, however, is another matter. Those claims are based on two distinct categories of statements allegedly made by plaintiffs: statements "(1) that plaintiffs are infringing defendants' trademark, and (2) that plaintiffs are engaged in criminal activity." *Id.* at *9. Plaintiffs cursorily state that subsections (a)(3) and (a)(4) of the District of Columbia's long-arm statute provide the Court with personal jurisdiction over Safeth with respect to these claims, *see* Pls.' Mem. Supp. Mot. Default J. ("Pls.' Mem.") at 8, ECF No. 35-1, but otherwise fail to address, and simply fail

11

to carry their burden regarding, whether personal jurisdiction may be exercised over Safeth with respect to plaintiffs' defamation claims. It may not, and therefore the defamation claims against Safeth will be dismissed.

Pursuant to subsection (a)(3) of the District of Columbia's long-arm statute, this Court "may exercise personal jurisdiction over a defendant if the claim arises from the defendant's 'causing tortious injury in the District of Columbia by an act or omission in the District of Columbia,'" *Helmer*, 393 F.3d at 208 (quoting D.C. Code § 13-423(a)(3)). This subsection of the long-arm statute "is a precise and intentionally restricted tort section, . . . which stops short of the outer limits of due process, . . . and which confers jurisdiction only over a defendant who *commits an act in the District* which causes an injury in the District." *Forras*, 812 F.3d at 1107 (omissions in original) (emphasis added by *Forras*) (quoting *Moncrief v. Lexington Herald-Leader Co.*, 807 F.2d 217, 221 (D.C. Cir. 1986)). Crucially, the mere publication or availability in Washington, DC of "defamatory or otherwise tortious statements that were made outside the District falls short of what subsection (a)(3) requires." *Id.*

Here, although plaintiffs unquestionably were *injured* in Washington, DC, as required by subsection (a)(3), no tortious "act or omission," namely a defamatory statement, occurred in the District of Columbia. D.C. Code § 13-423(a)(3); *see also McFarlane v. Esquire Magazine*, 74 F.3d 1296, 1300 (D.C. Cir. 1996) (noting this subsection's "careful distinction between 'injury' and 'act'"). Plaintiffs' complaint makes no plausible claim that the alleged defamatory statements were made in Washington, DC, and, to the contrary, the natural inference from the complaint is that they were made in Colorado, where Safeth has its principal place of business and the Lathuses reside. *See* Compl. ¶ 33. Merely that "the alleged injury was felt within the District" of Columbia, because the statements were published or otherwise accessible there, does

not suffice to bring plaintiffs' defamation claims within the ambit of subsection (a)(3). *Forras*, 812 F.3d at 1107.

Nor does subsection (a)(4) of the District of Columbia's long-arm statute provide personal jurisdiction over Safeth with respect to plaintiffs' defamation claims. That subsection provides that a District of Columbia court may exercise personal jurisdiction over a defendant whose "act or omission *outside* the District" causes "tortious injury [with]in the District" only if the defendant also "regularly does or solicits business, engages in any other persistent course of conduct, or derives substantial revenue from . . . services rendered" in Washington, DC. D.C. Code § 13-423(a)(4) (emphasis added). "The D.C. Court of Appeals has indicated that the reach of [this subsection of] § 13-423(a) is co-extensive with the reach of constitutional due process," *Erwin-Simpson v. AirAsia Berhad*, 985 F.3d 883, 889 (D.C. Cir. 2021) (quoting *FC Inv. Grp. LC v. IFX Markets, Ltd.*, 529 F.3d 1087, 1092 (D.C. Cir. 2008)), which "permits a court to exercise general jurisdiction over a foreign corporation 'when [its] affiliations with the State are "so continuous and systematic" as to render [it] essentially at home in the forum State,'" *id.* at 889–90 (alterations in original) (quoting *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 919 (2011)). Plaintiff does not, and in fact could not, plausibly allege that defendant has such expansive and systematic contacts with this District. *See id.* at 890–91 (holding that defendant's "in-forum online business alone" is inadequate to support "general jurisdiction," under the Due Process Clause, "over a nonresident corporation); *Forras*, 812 F.3d at 1108 (holding that accessibility of allegedly defamatory statements within District is inadequate to establish that defendant engages in persistent course of conduct within that District).[6]

---

[6] Moreover, plaintiffs' defamation claims plainly do not fall within the scope of subsection (a)(1) of the long-arm statute, as these claims do not arise out of Safeth's online sale in Washington, DC of its cryptocurrency products, and indeed are entirely distinct from such sale. *See* D.C. Code § 13-423(a)(1). Nor does the fact that the Court has personal jurisdiction over Safeth with respect to plaintiffs' trademark-infringement claim permit it to

Accordingly, the Court may exercise personal jurisdiction over Safeth only as to plaintiffs' trademark-infringement claim, not their defamation claims. Plaintiffs' Motion for Default Judgment as to its defamation claims is therefore denied and those defamation claims against Safeth are dismissed. The motion for default judgment is next considered with respect to plaintiffs' trademark-infringement claim against Safeth.

### 2. *Default Judgment as to Plaintiffs' Trademark-Infringement Claim*

Once the defendant's default and personal jurisdiction over the defendant are satisfied—which requirements, as explained, are met here as to plaintiffs' trademark-infringement claim—default judgment is appropriate in "the absence of any request to set aside the default or suggestion by the defendant that it has a meritorious defense." *Int'l Painters & Allied Trades Indus. Pension Fund v. Auxier Drywall, LLC*, 531 F. Supp. 2d 56, 57 (D.D.C. 2008) (quoting *Gutierrez v. Berg Contracting Inc.*, No. Civ.A. 99-3044(TAF), 2000 WL 331721, at *1 (D.D.C. Mar. 20, 2000)); *see also, e.g.*, *SEIU Nat'l Pension Fund v. Bayville Healthcare*, No. 19-cv-833, 2019 WL 7066799, at *3 (D.D.C. Dec. 23, 2019); *Fanning v. Permanent Sol. Indus., Inc.*, 257 F.R.D. 4, 7 (D.D.C. 2009). As plaintiffs note, Safeth has not submitted an answer to plaintiffs' complaint, no counsel for Safeth has entered an appearance, and neither individual defendant has suggested that either of them, or Safeth, has a meritorious defense to plaintiffs' trademark-infringement claim. *See* Pls.' Mem. at 12. In fact, although the Lathuses have been highly communicative with the Court and plaintiffs' counsel, submitting dozens of emails over the course of the instant litigation, they have not contested plaintiffs' trademark-infringement claims, instead directing their objections to plaintiffs' defamation claims. *See Safex Found., Inc.*,

---

exercise personal jurisdiction over Safeth with respect to plaintiffs' defamation claims. *See id.* § 13-423(b) ("When jurisdiction over a person is based solely upon this section, only a claim for relief arising from acts enumerated in this section may be asserted against him.").

2021 WL 1167266, at *1 n.2, *4.  Furthermore, as already explained, the Lathuses have agreed to a permanent injunction prohibiting them from further trademark-infringement activity. *See supra* Part III.A.  That the Lathuses have no defense against plaintiffs' trademark-infringement claim reasonably permits the inference that Safeth likewise has no defense against the same claim.

Furthermore, the appropriateness of a default judgment against Safeth on plaintiffs' trademark-infringement claim is bolstered by the Court's prior determinations, in the course of granting in part plaintiffs' motions for a temporary restraining order and a preliminary injunction, that plaintiffs are likely to succeed on the merits of this claim.  *See* Hr'g Tr. at 57:17–62:3; *Safex Found., Inc.*, 2021 WL 1167266, at *6–7.  To be sure, the determination that plaintiffs are *likely* to succeed on the merits of a claim, necessary for a plaintiff to receive preliminary injunctive relief, *see Winter v. Nat. Res. Def. Council*, 555 U.S. 7, 20 (2008), is obviously not a final resolution of the merits.  Yet the facts that the merits of the instant lawsuit have been subject to scrutiny, with input from the defendants, and that plaintiffs were found likely to prevail on their trademark-infringement claim, provide additional foundation for entry of a default judgment against Safeth on this claim, thereby overcoming courts' "reluctan[ce] to enter and enforce judgments unwarranted by the facts," *Jackson*, 636 F.2d at 835.  Accordingly, then, plaintiffs' Motion for Default Judgment as to their trademark-infringement claim will be granted, and plaintiffs' requested permanent injunction enjoining Safeth from further trademark-infringement activities, *see* Compl. at 38, will be entered.[7]

---

[7] Not content with the entry of a consent permanent injunction against the Lathuses and a permanent injunction against Safeth, plaintiffs also seek to recover compensatory damages, punitive damages, and attorney's fees from Safeth, on account of the default judgment against Safeth.  *See* Pls.' Mem. at 14–16.  These requests are denied.  With Safeth's liability on plaintiffs' trademark-infringement claim established, the Court must "make an independent determination of the sum [of damages, if any,] to be awarded," *Sanchez v. Devashish*, 322 F.R.D. 32, 37 (D.D.C. 2017) (quoting *Boland v. Yoccabel Constr. Co.*, 293 F.R.D. 13, 17 (D.D.C. 2013)), which damages "plaintiffs must prove . . . to a reasonable certainty," *Boland v. Elite Terrazzo Flooring, Inc.*, 763 F. Supp. 2d 64, 68

## IV. CONCLUSION

Per the parties' agreement, a permanent injunction will be entered against the Lathuses enjoining them from infringing on plaintiffs' trademark and from making public statements that plaintiffs are infringing on defendants' trademark.

Additionally, for the foregoing reasons, plaintiffs' Motion for Default Judgment against Safeth will be granted in part and denied in part. That motion is denied as to plaintiffs' defamation claims against Safeth, as the Court lacks personal jurisdiction over Safeth with respect to such claims, and granted as to plaintiffs' trademark-infringement claim against Safeth. Accordingly, a permanent injunction will be entered against Safeth enjoining it from infringing on plaintiffs' trademark, although plaintiffs' request for damages and attorney's fees premised on the partial default judgment against Safeth is denied.

An Order consistent with this Memorandum Opinion will be entered contemporaneously.

Date: May 12, 2021

_____
BERYL A. HOWELL
Chief Judge

---

(D.D.C. 2011) (citing *Flynn v. Extreme Granite, Inc.*, 671 F. Supp. 2d 157, 162 (D.D.C. 2009)). Unliquidated damages may be awarded only after a hearing. *Jackson*, 636 F.2d at 835. Such a hearing will be unnecessary here, however, as plaintiffs will be unable to prove any damages to the requisite "reasonable certainty," and, to the contrary, any damages amount would be inherently speculative. As previously explained, the harm suffered by plaintiffs was incurred in the context of their attempts "to develop a largely unknown product in a dynamic, tumultuous market." *Safex Found., Inc.*, 2021 WL 1167266, at *12. In such circumstances, determining any amount of damages would be a highly speculative endeavor. Furthermore, in light of these highly volatile background conditions, disaggregating damages attributable to Safeth's trademark infringement, for which it is liable, from those attributable to its alleged defamation of plaintiffs, for which it is not, would amount to no more than guesswork.

The Court also notes that defendants' financial circumstances, due to family and other personal demands on the Lathuses, would likely make an award of damages or other monetary relief futile. *See* Defs.' Sealed Documents, ECF Nos. 23, 36. Plaintiffs effectively concede the impracticability of determining and collecting damages and other monetary relief in this case when they "request[] that the Court forego [sic] scheduling the damages hearing immediately as Safex is exploring whether this matter may be resolved through the issuance of a permanent injunction or otherwise resolved." Pl.'s Mem. at 16. In these circumstances, injunctive relief will have to suffice.